UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12-CV-00101-TBR

M.T., a minor, *et al.*                                                                                    Plaintiffs,

v.

TIMOTHY P. SAUM, *et al.*                                                                            Defendants.

**MEMORANDUM OPINION**

This matter is before the Court upon the motion for partial summary judgment filed by Defendants Lakeland Tours, LLC; Timothy P. Saum; Southwestern Illinois Bus Company, LLC II d/b/a New Image Travel, and Lakeland Tours, LLC d/b/a WorldStrides (collectively "Defendants"). (Docket No. 92.) Plaintiffs have responded, (Docket No. 114), and Defendants have replied, (Docket No. 122). Fully briefed, this matter is ripe for adjudication. For the reasons stated below, Defendants' motion will be GRANTED.

**Factual Background**

Plaintiffs were among fifty-five passengers on a commercial charter bus traveling from Cub Run, Kentucky to Washington, D.C. on an educational field trip. Southwestern Illinois Bus Company, LLC d/b/a/ New Image Travel ("New Image") owned the bus, and a New Image employee, Timothy P. Saum, operated it. Lakeland Tours, LLC, d/b/a WorldStrides ("WorldStrides"), brokered and chartered the trip. Shortly after the group departed on June 6, 2012, the bus overturned on Ky. Hwy. 728 in Hart County, Kentucky.

In their Complaint, Plaintiffs allege that the accident occurred because Saum "rounded a curve at a high rate of speed, while driving one-handed, and lost control of the bus, causing it to overturn." (Docket No. 112 at 2.) Plaintiffs argue that Saum breached his duty to use the highest degree of care by operating the bus in a "grossly negligent, wanton, reckless and careless manner, and failing to maintain proper control over the vehicle he was operating." (Docket No. 81 at 4.) (Docket No. 81 at 4.)

Moreover, they point to Saum's conduct as violating Ky. Rev. Stat. 189.010, *et seq.*, and Federal Motor Carrier Safety Administration Regulation Sec. 392.1 and 392.2. Accordingly, they raise negligence and negligence *per se* claims against Saum.

In addition to alleging that Saum's alleged gross negligence is imputed to both New Image and WorldStrides under a vicarious liability theory, Plaintiffs also raise independent claims against each company. They contend that New Image negligently hired, trained, and supervised Saum. (Docket No. 81 at 4-5.) They further propose that WorldStrides both breached its duty to properly investigate the backgrounds of Saum and New Image before hiring them to transport members of the public. Finally, they allege that WorldStrides's misrepresented the structure of the company and gave false assurances of safety in violation of the Kentucky Consumer Protection Act. (Docket No. 81 at 5.)

Now before the Court is Defendants' motion for summary judgment regarding Plaintiffs' punitive damages claims. Defendants argue that Plaintiffs are unable to satisfy the threshold requirements under Kentucky law to raise a jury question on punitive damages. For the reasons explained below, the Court agrees.

**Legal Standard**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of

his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

Finally, while the substantive law of Kentucky is applicable to this case pursuant to *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Procedure 56, not Kentucky's summary judgment standard as articulated in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991). *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), abrogated on other grounds by *Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010).

**Discussion**

Plaintiffs contend that Saum operated the bus with reckless disregard for the lives, safety, and property of the Plaintiffs and that his conduct amounts to gross negligence, entitling them to punitive damages. (Docket No. 81 at 5.) Defendants move for partial summary judgment on this claim, arguing that Plaintiffs have failed to prove gross negligence by clear and convincing evidence. (Docket No. 92-1.)

Kentucky law requires a plaintiff seeking punitive damages to prove by clear and convincing evidence that the defendant acted with gross negligence. Ky. Rev. Stat. § 411.184(2); *Williams*, 972 S.W. at 264. This clear and convincing standard can be satisfied by producing evidence of a probative and substantial nature that carries sufficient weight to convince ordinarily prudent-minded people of its validity. *See W.A. v. Cabinet for Health & Family Servs.*, 275 S.W.3d 214, 220 (Ky. Ct. App. 2008). "[W]here the nonmoving party must meet a higher burden of proof than usual, that party must meet the

same burden in resisting the summary judgment motion." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct 2505, 2512 (1986)).

The Kentucky Supreme Court has held that to impose punitive damages, the conduct at issue must amount to at least common law "gross negligence." *Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1988). The same Court explained that in order to justify punitive damages, "there must first be a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by 'wanton or reckless disregard for the lives, safety or property of others.'" *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985).

I. **Saum's conduct does not support a jury question regarding punitive damages.**

  A. **Saum's conduct was ordinary negligence as a matter of Kentucky law.**

The Defendants argue that according to the above standards, punitive damages cannot be assessed against Saum, as his conduct constitutes only ordinary negligence under Kentucky law. Plaintiffs respond that Saum's driving was sufficiently reckless as to constitute gross negligence. (Docket No. 81 at 3.) Specifically, they point to his failure to heed passengers' advice to take a less narrow and curvy road and to keep an eye out for Amish buggies; his rate of speed at fifty-two miles per hour and eventually exceeding sixty miles per hour; and his "driving with only his right hand . . . braking too late, and braking in the curve." (Docket No. 115 at 7-8.)

In Kentucky, "the well established common law standard for awarding punitive damages was [and is] gross negligence." *Kinney v. Butcher*, 131 S.W.3d 357, 358-59 (Ky. Ct. App. 2004) (alteration in original) (quoting *Williams v. Wilson*, 972 S.W.2d 260, 264 (Ky. 1998)). "[T]he prevailing understanding defines gross negligence as a 'wanton or reckless disregard for the safety of other persons.'" *Id.* at 359 (quoting *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 52 (Ky. 2003)). The jury need not find the defendant to have acted with "express malice" to determine that he was grossly negligent; rather, "it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation." *Id.*

Kentucky courts have largely disallowed punitive damages as matter of law in cases involving vehicle accidents. For example, *Kinney* explained that a driver's traveling ten miles above the speed limit and failing to complete a pass before entering a no-passing zone constituted only ordinary negligence. "We were to accept Kinney's argument that it amounts to wanton or reckless disregard for the safety of others," the Kentucky Court of Appeals reasoned, "it would effectively eliminate the distinction between ordinary and gross negligence in the context of automobile accidents." *Kinney*, 131 S.W.3d at 359.

The Court of Appeals explained that although almost all vehicle accidents result from negligent conduct, few are sufficiently reckless as to comprise the gross negligence requisite for punitive damages. *Id.* For example, Kentucky courts have determined that punitive damages are justified when a driver is intoxicated. *See, e.g.*, *Stewart v. Estate of Cooper*, 102 S.W.3d 913 (Ky. 2003); *Shortridge v. Rice*, 929 S.W.2d 194 (Ky. Ct. App. 1996). Punitive damages are also warranted when there are numerous occurrences, or egregious occurrences, of misconduct. *See Phelps v. Louisville Water Co.*, 103 S.W.3d 46 (Ky. 2003) (explaining that a jury could find gross negligence where there were eighteen instances of misconduct "evidenc[ing] a conscious disregard for public safety, including several misrepresentations of a highway's unsafe condition, failures to notify the proper entities, and violations of the company's internal policies). *See also Gersh v. Bowman*, 239 S.W.3d 567, 572 (Ky. Ct. App. 2007) (finding that a jury could find gross negligence when the driver was traveling "at least twenty-four miles per hour over the posted speed limit for the road, and at least thirty-four miles per hour more than the speed limit for the curve," with two passengers in his vehicle and in the darkness and when the driver's passenger warned the driver of an upcoming curve).

The essential question at the heart of the gross negligence analysis is "whether the misconduct 'has the character of outrage.'" *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985) (quoting *Hensley v. Paul Miller Ford Co., Inc.*, 508 S.W.2d 759, 762 (Ky. 1974)). Saum's culpability does not rise to such an extreme. Although Plaintiffs allege that his speeds were excessive, Saum in fact remained under the speed limit—traveling at fifty-two miles per hour where the limit was

fifty-five—and in his own lane at the time of the accident. (Docket No. 115 at 8.) The Plaintiffs do not dispute that Saum did not exceed the speed limit, nor do they assert that he was intoxicated or excessively fatigued.

This conduct is more akin to the *Kinney* defendant, who exceeded the speed limit by ten miles per hour and drove into oncoming traffic, than the more reprehensible behavior of the drunk drivers and egregious misconduct discussed above.[1] The facts before the Court simply fail to rise to such a level. Like *Kinney*, a finding of gross negligence in this case would effectively eliminate the distinction between gross and ordinary negligence. Saum's misconduct was both negligent and disastrous—but not outrageous. Therefore, his actions constitute only ordinary negligence under Kentucky law and do not warrant a punitive damages award.

### B. Saum's medical condition did not cause the accident; therefore, any misrepresentation or failure to disclose it does not justify punitive damages.

Plaintiffs expend much effort detailing Saum's medical history, explaining that he "was not medically qualified to drive a bus under the Federal Motor Carrier Safety Regulations" based on his status as an insulin-dependent diabetic. (Docket No. 115 at 1.) They assert that he omitted this crucial element of his medical history on his job application and when he submitted medical information to obtain a commercial driving license. Plaintiffs' apparent theory is that had his employer known of his insulin dependence, federal regulations would have precluded him from obtaining his commercial driver's license, and thus he would never have encountered Plaintiffs, much less have caused them harm.

However, these assertions play no role in the Court's punitive damages analysis. In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), the Supreme Court explained that no state may punish a defendant for out-of-state conduct unless such conduct has "a nexus to the specific harm suffered by the plaintiff." *Id.* at 422. Saum's misrepresentations regarding his medical condition all occurred outside of Kentucky, including his failure to report his insulin dependence to his Indiana employer and to

---

[1] *See also Gibson v. Fuel Transp., Inc.*, 410 S.W.3d 56 (Ky. 2013) (denying decedent's estate a jury instruction on punitive damages against a driver who lost control and overcorrected while exceeding the speed limit).

the Indiana doctors who certified his medical fitness to drive commercial motor vehicles. Therefore, these representations do not warrant punitive damages.

Furthermore, Plaintiffs have not demonstrated the requisite causal nexus between Saum's diabetes and his negligent driving and loss of control. "[A] plaintiff cannot recover punitive damages against a defendant unless that defendant's conduct was the proximate cause of any injury to the plaintiff." *Taylor v. King*, 345 S.W.3d 237, 241-42 (Ky. App. 2010) (citing *Jackson v. Tullar*, 285 S.W.3d 290, 297 (Ky. Ct. App. 2007)). As the Eastern District of Kentucky has held,

> The fact that extra-territorial acts or omissions, even wrongful ones, result in a defendant being in place where he otherwise would not have been—a place where he ultimately causes harm to another person—is insufficient to justify punitive damages where the extra-territorial conduct is independent of, and not proximately related to, the acts upon which liability is premised.

*Estate of Embry v. GEO Transp. Of Ind., Inc.*, 478 F. Supp. 2d 914, 922 (E.D. Ky. 2007).

Here, as in *Embry*, there is no proximate relationship between the Kentucky accident and Saum's failure to accurately report his entire medical history to those who approved his application for a commercial driver's license. Plaintiffs have submitted neither medical evidence nor expert testimony demonstrating that a diabetic event caused Saum's accident. Therefore, there is no evidence upon which a reasonable jury could conclude, upon the clear and convincing standard, that Saum's failure to disclose his insulin dependence constituted gross negligence.

### C. Because testimony characterizing Saum's driving as "reckless" is inadmissible, it cannot serve as a basis for punitive damages.

Plaintiffs point to the testimony of Saum and of New Image Safety Director Rick Juelfs describing Saum's driving as "reckless." (Docket No. 115 at 9.) Plaintiffs characterize such testimony as admitting that Saum's conduct was legally reckless, having driven "in such a manner as to constitute a wanton and reckless disregard for the lives and safety of others." (Docket No. 115 at 15-16.) Defendants object that this testimony constitutes an inadmissible legal conclusion. (Docket No. 122 at 9.)

Opinions that simply state a legal conclusion while not elucidating the facts are excludable under the Rules of Evidence. "It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." *Terres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (quotation omitted). Where a witness's testimony contains legal conclusions, it "convey[s] the witness' unexpressed, and perhaps erroneous, legal standards to the jury." *Id.*

As explained by the Advisory Committee note to Rule 704:

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have sufficient capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Fed. R. Evid. 704 Advisory Committee Note.

"The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." *Terres*, 758 F.2d at 151 (citing *United States v. Hearst*, 563 F.2d 1331, 1351 (9th Cir. 1977)). Applying this principle, testimony that a defendant acted "recklessly" in essence tells the jury what result to reach on certain elements of Plaintiffs' claims and is accordingly an inadmissible legal conclusion. *See Sadler v. Advanced Bionics, LLC*, 2013 WL 1385376, at *4.

Plaintiffs argue that the witnesses' discussion of Saum's "reckless" driving is not a legal conclusion, but a judicial admission. (Docket No. 115 at 37.) The Court cannot agree. Courts are reluctant to treat statements concerning legal conclusions as binding judicial admissions. *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997). "Determinations of negligence and proximate causation require the application of rules of law to complex factual patterns. Judicial admissions, in contrast, typically concern only matters of fact." *Id.* Similarly, the inquiry regarding Saum's alleged

8

recklessness draws upon legal conclusions; therefore, the statements at issue do not constitute factual admissions and are inadmissible.

Because "evidence submitted in opposition to a motion for summary judgment must be admissible," *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007), the Court may not consider the testimony at issue at the summary judgment stage.

II.     **New Image's conduct does not support a jury question regarding punitive damages.**

Plaintiffs next allege that they are entitled to recover punitive damages from New Image, the company that employed Saum. They offer theories of both vicarious liability and independent recovery. The Court will consider each in turn.

   A.  **Plaintiffs' claim of vicarious liability for Saum's conduct fails as a matter of law.**

In considering the possibility of vicarious liability, the Court must determine whether Plaintiffs have presented clear and convincing evidence that New Image should have anticipated Saum's reprehensible conduct. Kentucky law expressly limits the imposition of punitive damages against an employer for its employee's negligence. Ky. Rev. Stat. § 411.184(3) provides:

> In no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question.

*Id.* As noted by Justice Cooper, "Kentucky is the only state with a statute that so broadly limits vicarious liability for punitive damages." *Berrier v. Bizer*, 57 S.W.3d 271, 283 (Ky. 2001). Only few cases on record have recognized vicarious liability for punitive damages. *See Estate of Presley v. CCS of Conway*, 2004 WL 1179448, at *4 (W.D. Ky. 2004).

In *Kentucky Farm Bureau Mut. Ins. Co. v. Troxell*, the Kentucky Supreme Court upheld the use of a jury instruction permitting the award of punitive damages against the insurance company because the company knew that its claims adjuster had used unacceptable methods for handling claims in the past and

knew of the agent's pattern of unacceptable behavior. 959 S.W.2d 82, 85-86 (Ky. 1997). *Troxell* emphasized that the company knew of an inappropriate *pattern* conducted by its claims adjuster while the employee *worked for* the employer. *Troxell*, 959 S.W.2d, at 87 (emphasis added). Accordingly, the Court found that the employer should have anticipated its employee's grossly negligent conduct. *Id.*

By contrast to *Troxell*, there is no evidence that Saum had previously committed similar errors or had a history of similar conduct while employed by New Image. Plaintiffs present no evidence that Saum, prior to the Hart County accident, had been in any accidents in a commercial vehicle or had ever been cited for a moving violation in a commercial vehicle. However, prior to the Hart County accident, Saum received several traffic out-of-state traffic violations in his personal vehicle. Specifically, his personal driving record reflects speeding tickets in 1992 (North Carolina), 2003 (Indiana), 2007 (Missouri), and 2010 (Missouri). (Docket No. 92 at 22.) He was also cited for disregarding a traffic signal in 1981 (Indiana), an unspecified violation in 2000 (Indiana), and a seat belt violation in 2010 (Indiana). (Docket No. 92 at 22.)

The Court finds that these instances do not qualify as a pattern warranting a punitive damages instruction. *State Farm* limits punitive damages to "the conduct that harmed the plaintiff" and allows consideration of extraterritorial conduct only if it was a "proximate rather than mere 'but for' cause[e]'" of a plaintiff's injury. *State Farm*, 538 U.S. at 422-23; *Estate of Embry*, 478 F. Supp. 2d at 922. These incidents connote only ordinary negligence, not punishable by punitive damages. *See Kinney*, 131 S.W.3d at 358-59. Several are either irrelevant to the Hart County accident or remote in time.

In the instant case, Plaintiffs have failed to demonstrate that New Image should have anticipated Saum's conduct on the night of the Hart County accident. *See Steinhoff v. Upriver Restaurant Joint Venture*, 117 F. Supp. 2d 598, 606 (E.D. Ky. 2000). According, the Court finds that Plaintiffs cannot recover punitive damages from New Image based on vicarious liability.

**B. Plaintiffs' negligent hiring, training, and supervision claim against New Image must fail as a matter of law.**

Defendants next move for summary judgment on Plaintiffs' claim of negligent hiring, training, or supervision against New Image. "Under Kentucky law, the elements of negligent hiring and retention are: (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009). Here, Defendants argue that summary judgment is appropriate because the uncontroverted evidence shows that Saum was well-trained and experienced, had a satisfactory driving record, and was qualified to operate the bus. Defendants propose that this evidence leaves Plaintiffs unable to show that the accident was foreseeable to New Image. *See Grayson v. Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987), *superseded by statute*, Ky. Rev. Stat. § 413.241 (noting the general rule that "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury").

Plaintiffs allege that New Image permitted an otherwise avoidable accident to occur because of their faulty pre-employment investigation of Saum. First, they argue that New Image's background investigation of Saum was insufficient, pointing to his numerous reprimands by previous employers. (Docket No. 115 at 3.) However, many of these reprimands lack any connection to his capability as a driver: violations of smoking regulations and possessing pornography, for example. Such reprimands bear no relation to the Plaintiffs' harm. "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23 (2003). Many of Plaintiffs' characterizations of Saum are tangential, at best, and demonstrate nothing related to their claim.

Although Plaintiffs argue that New Image wrongfully failed to discover Saum's omission of his insulin-dependent diabetes, the Court cannot agree. When New Image hired Saum, it required him to undergo an updated Department of Transportation medical examination, despite the fact that his medical certification from METS remained valid. (Docket No. 92-12, Exhibit 9.) Saum was consequently certified as medically qualified for a second time. (Docket No. 92-12, Saum Dep., Exhibit 10.) More significantly, Kentucky law dictates that an employer "must have a modicum of faith and trust in a job applicant" and is entitled to rely on an applicant's ostensibly truthful answers in an application for employment. Therefore, the employer's failure to discover an applicant's dishonesty does not constitute even ordinary negligence. *Carberry v. Golden Hawk Transp. Co.*, 402 S.W.3d 556, 563 (Ky. Ct. App. 2013). Therefore, New Image's reliance upon Saum's representations cannot serve as a basis for either negligent hiring or punitive damages.

Plaintiffs' remaining allegations regarding the background investigation fall short. Saum passed a pre-employment drug test, and both his Indiana driving record and Pre-Employment Screening Program Report from the Federal Motor Carrier Safety Administration indicated that he was qualified to drive a commercial vehicle. In addition, the record demonstrates that Saum was not a new or inexperienced driver, despite being characterized as an "entry-level driver" by the FMCSR standards. Although he did not yet have a full year of interstate commerce experience, Saum brought many years of varied involvement to the position, having driven commercial-sized trucks and busses for the U.S. Army and worked as a maintenance superintendent for Metro Evansville Transit System (METS). (Docket No. 115-1 at 15:18-18:7; 25:6-29:18.) The latter required Saum to obtain a commercial driver's license, which he earned in 2007. (Docket No. 115-1 at 27:21-28:16.)

Furthermore, Kentucky law provides that "being a relatively new employee . . . is no reason, in itself, for [an employer] to anticipate that [a driver] would commit gross negligence in driving a truck up an interstate, particularly after undergoing the requisite vocational training and certification requirements for driving trucks." *Jones v. Blankenship*, 2007 WL 3400115, at *5 (E.D. Ky. Nov. 13, 2007). In its

commercial driving case, the *Jones* Court reasoned that an employee's inexperience is no basis for his employer to anticipate an accident; therefore, the employer could not be subject to punitive damages. *Id.* Likewise, Saum's alleged inexperience did not require New Image to anticipate that he would cause an accident.

Saum also underwent additional training and road testing upon being hired by New Image. (Docket No. 115-3 at 44:19-46:6, 48:1-4, 53:13-15.) His first test was administered for his position as a mechanic; although he failed his first road test, all such problem areas were satisfactory by the time that he took a second test for passenger-driving purposes. (Docket No. 115-3 at 73:1-76:20.) An employee's failure of proficiency tests does not create a basis for his employer to anticipate future accidents when he later passes the tests upon retraining. *See In re Air Crash at Lexington, Ky.*, 2011 WL 350469, at *8 (E.D. Ky. Feb. 2, 2011) (holding that the airline was not liable for punitive damages, as later-corrected failed tests were not "clear and convincing evidence that there were similar incidents from which Comair should have anticipated the pilots' conduct that caused the crash.").

Finally, the Court's analysis focuses upon the existence of a proximate relationship between Saum's past and the Hart County accident. *State Farm* precludes consideration of extra-territorial conduct that did not proximately cause a plaintiff's injury as a basis for punitive damages. *See* 538 U.S. at 421-22. The United States Supreme Court held that a state cannot punish a defendant for out-of-state conduct unless there is "a nexus to the specific harm suffered by the plaintiff." *State Farm.* 538 U.S. at 422. "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Id.* Kentucky law requires a similarly close causal relationship: in Kentucky, "a plaintiff cannot recover punitive damages against a defendant unless that defendant's conduct was the proximate cause of any injury to the plaintiff." *Jackson v. Tullar*, 285 S.W.3d 290, 297 (Ky. Ct. App. 2007) (citing *Fowler v. Mantooth*, 683 S.W.2d 250 (Ky. 1984)).

13

Plaintiffs contend that Saum had a history of traffic violations and employment-related discipline, as well as a generally unprofessional attitude toward his job. Specifically, METS disciplined Saum for smoking, committing payroll errors, and "accuracy and attention errors" in training new employees. (Docket No. 115-1, Exhibits 1-3.) They also point to complaints that Saum followed his personal GPS rather than the route maps provided to him. (Docket No. 115-1, Exhibit 6.) They argue that these occurrences share a proximate nexus with the Hart County accident, rendering Plaintiffs' injuries foreseeable and properly subjecting New Image to punitive damages for negligent hiring.

The Court perceives no proximate "nexus" between Saum's employment and driving history and the Plaintiffs' harm. The episodes discussed above are not "of a similar nature" to the Hart County accident and do not constitute a pattern supporting the imposition of punitive damages. Put simply, there is no proximate relationship between the Hart County accident and these incidents—regardless of where they occurred.[2] Therefore, there is no evidence by which a reasonable jury could conclude, by the clear and convincing standard, that New Image was grossly negligent in not foreseeing that Saum would cause Plaintiffs' bus to overturn.

Moreover, the Court again notes that a tortfeasor's conduct must constitute gross negligence in order to award punitive damages. *Gersh*, 239 S.W.3d at 572 (citing *Kinney*, 131 S.W.4d at 385-59). That is, to subject New Image to punitive damages, the Court must find that it acted with "a wanton or reckless disregard for the safety of other persons." *Id.* Had the Court found that Saum's driving and employment history should have raised red flags during the hiring process and that New Image did not use reasonable care, this act would nonetheless not have been sufficiently outrageous as to justify punitive damages.

### III. WorldStrides' conduct does not support a jury question regarding punitive damages.

In their Complaint, Plaintiffs allege that Saum's gross negligence is imputed not only to New Image, his employer, but also to WorldStrides. (Docket No. 81 at 4.) As Defendants note, the

---

[2] *Cf. Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153 (Ky. 2004) (finding that evidence of Ford's out-of-state sale of vehicles with faulty transmissions was properly admitted under *State Farm* because the jury found that the plaintiff's death was caused by the defective design of his Ford transmission).

uncontroverted evidence establishes that Saum was not WorldStrides's servant, agent, or employee. (See Docket No. 81 at ¶ 15 "WorldStrides did not employ a single bus driver.") Because no direct employment relationship existed and for the reasons discussed above, WorldStrides cannot be vicariously liable for the Hart County accident.

Plaintiffs' alternative basis for seeking punitive damages from WorldStrides is the company's negligent selection of a common carrier. (Docket No. 81 at 4-5.)[3] WorldStrides personnel have testified that in choosing to contract with New Image, they confirmed that New Image received the best possible safety rating from the Federal Motor Carrier Safety Administration. (Docket No. 121-1 at 77:24-79:11; Docket No. 98-2 at 57:18-23.) WorldStrides also interviewed the company and reviewed customer service surveys. (Docket No. 121-1 at 77:24-79:11; Docket No. 98-2 at 57:18-23.) In addition, New Image—not WorldStrides—employed Saum. WorldStrides was unaware that Saum would be assigned to drive the Plaintiffs, and it had no way to investigate his background. (Docket No. 121-1 at 62:22-64:15.) Furthermore, *Estate of Embry* disqualifies a punitive damages award against WorldStrides for the reasons discussed above: the particular risk created by WorldStrides's delegating driver screening responsibilities to New Image was not the risk that resulted in the accident. Rather, Plaintiffs' injuries were caused by Saum's ordinary negligence. *See Estate of Embry*, 478 F. Supp. at 922-24.

### IV. Violations of Federal Motor Carrier Safety Regulations ("FMCSR") would not entitle Plaintiffs to punitive damages.

In their response to the instant motion, Plaintiffs contend that Saum committed multiple FMCSR violations and violated the Kentucky Manual for Commercial Driver Licenses. (Docket No. 115 at 10.) The expert report of Roger Allen on behalf of Plaintiffs lists these violations. (Docket No. 98-3 at 11.)

---

[3] Docket No. 81 at 4-5. Plaintiffs also allege that WorldStrides's marketing materials misleadingly suggest that the company employs its own drivers. As explained in the Court's Memorandum Opinion regarding Defendants' motion for summary judgment on Plaintiffs' Kentucky Consumer Protection Act claims, Plaintiffs do not demonstrate that any alleged misrepresentation is outrageous or proximately caused the accident. Moreover, the Kentucky Consumer Protection Act does not provide an independent basis for punitive damages. *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 487 (Ky. Ct. App. 1978).

Allen has withdrawn his opinion that New Image violated regulations requiring drug testing and governing drivers' physical qualifications. (Docket No. 92-4 at 31:5-9, 48:3-11.) Of the remaining alleged violations, three describe "[t]he specific types of items that *a State* must include in the knowledge and skills tests that it administers to CDL applicants." 49 C.F.R. § 383.110 (emphasis added). Accordingly, Allen admits that these regulations impose no requirements on New Image. (Docket No. 92-4 at 53:14-15.)

An intentional violation of transportation regulations by a truck driver does not justify punitive damages. *See Horn v. Hancock*, 700 S.W.2d 419, 421 (Ky. Ct. App. 1985), *overruled on other grounds, Copper v. Fultz*, 812 S.W.2d 497 (Ky. 1991). "In general, the violation of a statute establishing rules of the road does not constitute gross negligence or willful or wanton conduct sufficient to support an award of punitive damages." *Spaulding*, 2012 WL 3845411, at *6. "[T]he fact of a violation ordinarily does not constitute gross negligence or other aggravated misconduct, or even evidence of such misconduct." *Id.*

Plaintiffs point to precedent from other jurisdictions wherein courts found a jury question on punitive damages against defendants who violated an FMCSR. However, these cases focus on specific duties that directly caused injury to the plaintiffs. For example, many of their cases involve fatigued commercial drivers who violated hours of service regulations and subsequently caused an accident, or commercial drivers whose failure to abide by regulations governing load securement caused them to drop objects being hauled, injuring or killing the plaintiffs. Conversely, Plaintiffs' transportation expert here cites only generally-worded regulations from which no specific duties arise. Instead, his conclusions arise from the occurrence of the accident itself.[4]

---

[4] These remaining regulations include 49 C.F.R. § 390.3(e)(1)-(2), requiring employers to "be knowledgeable of and comply with all regulations contained in this subchapter which are applicable to that motor carrier's operations" and requiring employers to instruct every driver on "all applicable regulations in this subchapter"; 49 C.F.R. § 390.13, stating that "[n]o person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter"; 49 C.F.R. § 391.11(b)(3), stating that a qualified driver is one who "[c]an, by reason of experience, training, or both, safely operate the type of commercial vehicle he/she drives"; 49 C.F.R. § 391.51, describing what must be contained in a driver qualification file; 49 C.F.R. § 392.1, requiring every motor carrier and its agents and employees to "be instructed in and comply with the rules in this part"; and 49 C.F.R. § 392.2, requiring all commercial motor vehicles to "be operated in accordance with the laws, ordinances, and regulations of the

**Conclusion**

The circumstances of the accident fail to satisfy the stringent test for punitive damages under Kentucky law. Moreover, Saum's extraterritorial conduct prior to the accident does not satisfy the constitutional nexus requirement. Accordingly, punitive damages are unavailable as a matter of law. An appropriate order will issue concurrently with this opinion.

---

jurisdiction in which it is being operated" and requiring compliance with and FMCSR standards imposing "a higher standard of care than that law, ordinance or regulation." (*See* Docket No. 98-3.)